Henry Carraher, next friend of Kathryn Carraher, Plaintiff in Error, v. Chicago Telephone Company, Defendant in Error.

## Gen. No. 18,532.

MASTER AND SERVANT, § 703*—*when evidence insufficient to show negligence of telephone company in maintaining safe switchboard for operator.* In an action for injuries sustained by a telephone operator, alleged to have been caused by the negligence of the telephone company in permitting a powerful current of electricity to pass through the wires and in maintaining wires and attachments not insulated, plaintiff's evidence *held* insufficient to prove the allegations of negligence.

Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed December 4, 1913, *nunc pro tunc* as of December 2, 1913.

THEODORE G. CASE, for plaintiff in error; MUNSON T. CASE, of counsel.

HOLT, WHEELER & SIDLEY, for defendant in error.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Kathryn Carraher, hereinafter called plaintiff, by next friend brought suit against the Chicago Telephone Company, hereinafter called defendant, to recover damages for personal injuries alleged to have been received by her while working as a switchboard operator for the defendant. At the conclusion of the introduction of testimony on behalf of the plaintiff, upon motion of the defendant, the court instructed the jury to find the defendant not guilty. The jury so found and judgment was entered on the verdict. Plaintiff contends that the court should not have given this peremptory instruction and urges that the judgment should be reversed.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

In her original declaration plaintiff alleges the duty of the defendant to allow "only a small current of electricity, sufficient to carry telephonic messages" to pass through its wires, and that it was negligent in permitting " a larger and stronger current of electricity to suddenly be transmitted through its lines." Subsequently two additional counts were filed, in the first of which it was alleged that the defendant negligently maintained its wires and attachments, not insulated, and that they were allowed to cross and come in contact with other wires charged with powerful currents of electricity, and that this condition so continued and remained for several days, and that on February 11, 1902, a powerful and destructive current of electricity passed from said other wires and attachments into the telephone wires, attachments and switchboard of the defendant, whereby they became charged with a large and destructive current of electricity, dangerous and destructive to life and health. No attempt was made to prove the averments of the second additional count; hence it is unnecessary to advert further to it.

The evidence as to the occurrence itself is that of a fellow-switchboard operator, who, while working at her own board, heard the plaintiff say that she had gotten a shock, and saw the plaintiff with the telephone cord, hereinafter described, in her hand, and that she "was dazed" and was assisted into another room. There was evidence that shortly afterwards she appeared nervous, which condition seemed to advance until about a year after that time, when her friends and relatives were led to believe from her conduct and condition that she was unsound mentally. The evidence also showed that she was suffering with some form of dementia at the time of the trial, which was nearly nine years after the date of the occurrence.

We have arrived at the conclusion that the ruling of the trial court was proper for the reason that plaintiff produced no legal evidence tending to prove

the allegations of either the original declaration or the first additional count. As we have noted above, the original declaration averred the duty of defendant to pass through its wires a small current of electricity, sufficient only to carry telephonic messages, the breach alleged being the passing through its lines of a larger and stronger current of electricity than this.

It appears from the evidence that at the time of the occurrence in question the so-called "talking current" was about twenty-four volts. As the words indicate, this is the current of electricity used for the transmission of messages. The so-called "ringing current" has a voltage of seventy-five or eighty when one bell is rung, and less voltage when a number are rung at the same time. This obviously refers to the current used in ringing the telephone bell for the purpose of attracting the attention of a subscriber. There is nothing whatever in the record evidencing any duty upon the defendant to pass through its lines only a "talking current," and from the very nature of the case no such evidence could be produced. It is impossible to conceive of a usable telephone system without some device for calling subscribers to the instrument, and that this "ringing current" necessitates a larger voltage is conceded. Even if the plaintiff received an electrical shock as is claimed, this standing alone could not support the charge of negligence now under consideration, especially in view of the evidence of plaintiff's witness that the resisting powers of the particular individual concerned is the important factor determining the amount of shock received, and that the plaintiff might have been in exactly the same condition of injury as she appeared to be in after the occurrence, as the result of receiving a current of even as low as ten volts.

Neither is there any evidence that the wires and attachments belonging to defendant were not insu-

lated or that they were allowed to cross and come in contact with other wires and attachments from which passed a powerful and destructive current of electricity into the wires, attachments and switchboard of the defendant, as alleged in the first additional count.

There was evidence tending to show some defect in the device called the "cord" and "plug" used in operating the switchboard. It would unduly extend this opinion to attempt any technical detailed description of this device. Any one who has seen even a small telephone switchboard will recognize the device as the black rubber plug, about the thickness of a lead pencil, which is inserted by the operator into a small hole or opening in the face of the switchboard when a telephone connection is desired. This rubber plug is attached to the end of a cord which runs down through a hole in a horizontal shelf, where a counterweight and pulley tend to draw the plug down when not in use, leaving it sticking up from the face of the shelf. This cord contains a wire or wires through which, when used, a current of electricity passes. The fellow-operator of the plaintiff testified that for two or three days before the occurrence in question one of the plugs had a white paper cap sticking on it, which was understood as notice that the particular plug or cord was out of order; that a repair man worked with tools for a time on this cord and then told the plaintiff that it was in repair and that she could use it; that shortly thereafter the witness heard plaintiff say, "Oh, I got a shock," and that witness turned and saw that plaintiff had this particular cord in her hand.

To conclude that this evidence either directly or inferentially tends to prove the allegations of the additional count is to indulge merely in speculation. To reach such a conclusion we should be compelled to presume that the cord was not repaired by the repair man, although the evidence tends to show the con-

trary; also that the alleged defect was absence of insulation; and upon this we must presume that there was a contact with other wires and attachments charged with powerful and destructive currents of electricity, and further that the result was the transmission of such a current to the wire in the cord held by plaintiff. Such indulgence in presumptions upon presumptions the law will not permit.

It is also important to note that plaintiff's expert mechanical witness testified that even if there existed any defect in the cord or plug causing a shock to the operator, it would be only a shock from the normal "ringing current" and that she might receive this shock with no defect in the apparatus if she should improperly handle it. In this connection we again recall Dr. Kiernan's statement that the comparative difference in voltage between the talking current and ringing current had no causal relation to the alleged injuries.

We deem it unnecessary to consider other points presented and discussed by both counsel, including what is urged in support of the claim that this is a *res ipsa loquitur* case. We have given consideration to these points, and are not led thereby to any different conclusion from that which we have indicated.

Plaintiff by her declaration alleged specific and particular acts of negligence, and upon the trial was bound to produce legal evidence tending to support at least one of such charges. In this, as we view the matter, she has failed, and the action of the trial court in instructing the jury as was done was proper, and therefore, for the reasons indicated, the judgment will be affirmed.

*Affirmed.*